## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON HOUSTON, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-4442 |
| THE CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                    **July 20, 2015**

Plaintiff Aaron Houston, proceeding *pro se*, raises claims for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 as well as pendant state law claims arising from Defendants' alleged seizure and retention of his gun. Defendants are the City of Philadelphia and several officials of the Philadelphia Police Department: Police Commissioner Charles Ramsey, Detective Mary Caldwell, Officer Anthony Barbera, and Officer Carol Austin. Presently before the Court is Defendants' motion for summary judgment.[1]

### I.    FACTS

On September 24, 2011, Mr. Houston was arrested and his gun was seized by the Philadelphia police. The parties were unable to agree on a joint statement of material facts and provide differing accounts of the events of September 24, 2011.

#### A.    Defendants' Account of the Events of September 24, 2011

Defendants, relying upon the police reports and other documentation, provide the following account of events. At approximately 4:30 A.M., the Philadelphia police responded to a

---

[1] Attached to Mr. Houston's reply brief is a two-page "Counter Claim for Partial Summary Judgment." Doc. No. 45 at 29-30. Because this document was filed with the reply brief and contains no substantial reasoning independent of the claims made in the reply brief, the Court construes the document as part of the reply brief rather than as a cross-motion for summary judgment.

radio call that an aggravated assault with a gun was in progress at Mr. Houston's apartment in South Philadelphia.[2] When the police arrived on the scene, the responding officers were told by multiple witnesses that Mr. Houston had punched his roommate Evelyn Ramos in the face during an argument and then pointed a handgun at Ms. Ramos's boyfriend, Thomas Carmody, as well as one Michael Morrissey.[3] Based upon these witness statements, Officer Anthony Barbera arrested Mr. Houston.[4]

At the time of his arrest, Mr. Houston told Officer Barbera that "I have a gun legally but I put it away" and no gun was recovered.[5] At approximately 5 A.M., Detective Mary Caldwell arrived on the scene and spoke to Officer Barbera.[6] Based upon this conversation, Detective Caldwell prepared an affidavit of probable cause and applied for a search warrant to recover the gun.[7] Shortly before 10 A.M., the Honorable Robert J. Rebstock of the Philadelphia Court of Common Pleas issued a search warrant for Mr. Houston's bedroom.[8] Detective Caldwell executed the warrant and recovered the gun at approximately 10:10 A.M.[9] No other weapons were recovered from the scene at the time of arrest or pursuant to the warrant.

### B.    Mr. Houston's Account of the Events of September 24, 2011

Mr. Houston's deposition testimony presents a narrative that differs in several respects from Defendants' account of the events of September 24, 2011. In his testimony, Mr. Houston

---

[2] Doc. No. 47-3 at 1.

[3] *Id.*; Doc. No. 47-1 at 1-2.

[4] Doc. No. 47-3 at 1.

[5] *Id.*

[6] Doc. No. 47-1 at 1.

[7] *Id.* at 2.

[8] *Id.*; *see also* Doc. No. 47-2 (the warrant).

[9] *Id.*

states that he was awakened at 3:35 A.M. by the sound of Ms. Ramos and another roommate, Haley Dampf, shouting drunken insults out of a window at passersby on the street below.[10] When he asked Ms. Ramos to quiet down, she became increasingly belligerent and attacked him, and Ms. Dampf subsequently joined in the attack.[11] Mr. Houston was able to push the two women off of him and retreat to his bedroom, at which point he tried to go back to sleep.[12]

At approximately 4 A.M., Mr. Carmody arrived at the apartment accompanied by Mr. Morrissey.[13] Both men threatened Mr. Houston and used racial slurs, and then forced open the bedroom door.[14] Mr. Carmody was holding a small throwing knife and Mr. Houston responded by pointing a nine millimeter handgun at both men.[15] Following a brief standoff, Mr. Carmody and Mr. Morrissey left Mr. Houston's bedroom and Mr. Houston returned his gun to a safety box.[16] Although Mr. Carmody remained in the hallway, Mr. Houston walked unarmed from his bedroom to the door of the apartment to let the police in.[17]

Mr. Houston also testified that Officer Barbera threw him to the ground and arrested him.[18] Although Mr. Houston claims that, while under arrest, he overheard the witnesses giving their statements to the responding officers, Mr. Houston contends that the witness statements were "blatant lies" that the responding officers chose to believe in order to "get an easy

---

[10] Transcript of Oral Deposition of Aaron Houston conducted July 14, 2014 (Doc. No. 51) ("Depo Tr.") at 17, 20-21.

[11] *Id.* at 17-18.

[12] *Id.* at 17-18, 22.

[13] *Id.* at 19.

[14] *Id.*

[15] Depo. Tr. at 25, 28.

[16] *Id.* at 25, 31.

[17] *Id.* at 26.

[18] *Id.* at 29.

conviction out of" Mr. Houston.[19] Specifically, the responding officers should have known that Mr. Carmody was lying because, by his account, the police seized the knife and Mr. Carmody subsequently claimed to have been unarmed.[20]

Mr. Houston claims that his gun was then seized by the police at the time of his arrest during a warrantless search of his bedroom.[21] Over the course of this litigation, Mr. Houston has provided conflicting accounts of which officer seized the gun. In the complaint, Mr. Houston alleged that Officer Barbera seized the gun.[22] At his deposition, Mr. Houston testified that he had seen another, unnamed officer do so.[23] After Defendants moved for summary judgment, Mr. Houston filed an affidavit attached to his sur-reply brief stating that he had "witnessed" Officer Barbera seizing the gun.[24]

Mr. Houston did not discuss the search warrant in his deposition testimony. In his filings, however, Mr. Houston contends that the warrant was "fabricated by Det. Caldwell retroactively" without further explanation of the claim.[25]

### C.      Events After September 24, 2011

Because the parties do not offer distinct accounts of the facts as they pertain to events occurring after September 24, 2011, the following account of those events is drawn from the parties' filings, the documents in the record, and Mr. Houston's deposition testimony. Mr. Houston was charged in the Philadelphia Court of Common Pleas with simple assault and

---

[19] *Id.* at 30.

[20] *Id.*

[21] Doc. No. 1 at 3.

[22] *Id.*

[23] Depo. Tr. at 32-34.

[24] Doc. No. 48 at 20.

[25] *Id.* at 2.

recklessly endangering another person.[26] Mr. Houston alleges that he orally requested the return

of his gun at a hearing during the criminal case, but the request was not ruled upon.[27] The

charges were subsequently dismissed because the Commonwealth's witnesses failed to appear.[28]

On July 9, 2012, the Court of Common Pleas ordered the expungement of all records of Mr.

Houston's arrest.[29]

      Mr. Houston subsequently purchased another nine millimeter handgun and applied for a

license to carry a concealed weapon.[30] As part of the application process, Mr. Houston claims

that he was interviewed by an unnamed police officer who told him that his application was

denied because of his expunged arrest record and because he had a bad character.[31] On April 29,

2013, the Philadelphia Police Department mailed Mr. Houston a written denial of his

application.[32] Mr. Houston timely appealed the Police Department's decision to the City of

Philadelphia Board of License and Inspection Review, which affirmed and informed Mr.

Houston that he could pursue an appeal to the Court of Common Pleas.[33] Mr. Houston did not

file an appeal.[34]

      Mr. Houston also attempted to obtain the return of the gun seized in 2011. Mr. Houston

claims that an unnamed employee of the Philadelphia Police Department provided Mr. Houston

---

[26] Doc. No. 45 at 9-10.

[27] Doc. No. 48 at 3.

[28] Depo. Tr. at 47.

[29] Doc. No. 45 at 9-10.

[30] Depo. Tr. at 36, 40.

[31] *Id.* at 40.

[32] Doc. No. 45 at 11.

[33] Doc. No. 45 at 12.

[34] Depo. Tr. at 45.

with a telephone number at which to request the return of his gun, and when Mr. Houston called

the number, another unnamed individual told Mr. Houston that he would have to hire a lawyer

and go to court in order for the Philadelphia police to return his gun.[35] Based upon this phone

call, Mr. Houston concluded that the Philadelphia police were engaging in "procedural

harassment" and would not return his gun.[36] On August 21, 2013, the Police Department sent

Mr. Houston a letter stating that his request had been denied and informing Mr. Houston that he

could petition the Court of Common Pleas for return of his property pursuant to Pennsylvania

Rule of Criminal Procedure 588.[37] The record contains no evidence that Mr. Houston filed a

Rule 588 motion or that his gun was returned.

## II.      STANDARD OF REVIEW

A court will award summary judgment on a claim or part of a claim where there is "no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."[38] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the

suit under the governing [substantive] law."[39] A dispute is "genuine" if "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."[40] In the event that a party who

will bear the burden of proof at trial "fails to make a showing sufficient to establish the existence

---

[35] *Id.* at 38.

[36] *Id.*

[37] Doc. No. 45 at 13.

[38] Fed. R. Civ. P. 56(a).

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[40] *Id.*

of an element essential to that party's case," the Rules of Civil Procedure "mandate[] the entry of summary judgment" against that party.[41]

### III.   DISCUSSION

While Mr. Houston's claims are difficult to delineate because the complaint does not state each claim as a separate count, the Court construes the complaint to raise an array of constitutional claims, including claims for violation of Mr. Houston's Fourth and Fourteenth Amendment rights, as well as various state-law claims.

### A.  Fourth Amendment Claims

In order to prevail on a civil rights claim, the plaintiff must prove two elements: first, that the defendant acted "under color" of state law or custom; and second, that the defendant deprived the plaintiff of a right protected by the federal constitution or other federal law.[42] The first element is not disputed. In the complaint, Mr. Houston appears to allege three violations of his Fourth Amendment rights on September 24, 2011: 1) a false arrest by Officer Barbera; 2) a warrantless search of his bedroom leading to the unlawful seizure of the gun; and 3) a search warrant "fabricated" by Detective Caldwell.[43]

#### i.   False Arrest

The complaint appears to allege that Officer Barbera falsely arrested Mr. Houston, and at his deposition, Mr. Houston continued to assert that Officer Barbera was unjustified in arresting him.[44] In his response to Defendants' motion for summary judgment on the false arrest claim,

---

[41] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[42] *See* 42 U.S.C. § 1983.

[43] Doc. No. 1 at 3 (alleging fabrication of the warrant).

[44] Doc. No. 1 at 3; Depo. Tr. at 30.

7

however, Mr. Houston stated that he had never sought to bring a false arrest claim.[45] The Court construes this statement as a withdrawal of any false arrest claim that might appear on the face of the complaint.

The Court will nevertheless address the merits of the false arrest claim because the claim appears on the face of the complaint and Defendants have moved for summary judgment on the claim. "To maintain a § 1983 false arrest claim, a plaintiff must show that the arresting officer lacked probable cause to make the arrest."[46] "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinarily prudent officer to believe that the party charged has committed an offense."[47] The reports of multiple witnesses at the scene that Mr. Houston had assaulted Ms. Ramos and pointed a gun at Mr. Carmody were more than sufficient to establish probable cause, whether or not Mr. Carmody was holding a small knife. Defendants' motion for summary judgment will therefore be granted on this claim.

ii.    The Warrantless Search of the Bedroom and Seizure of the Gun

Although the allegation is not clearly pleaded, the complaint appears to allege that Officer Barbera searched Mr. Houston's bedroom and seized his gun without a warrant.[48] In his deposition testimony, however, Mr. Houston was unequivocal that another, unnamed officer had performed the search and seizure:

> Q: Did you see who took the gun out of the safety box?
> A: I saw the officer come out of my room with the firearm. I don't know the name of the officer. The only officer's name I have is Anthony Barbera. There were six officers at the scene.

---

[45] Doc. No. 45 at 4.

[46] *Garcia v. County of Bucks, PA*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)).

[47] *Id.* (citing *Sharrar v. Felsing*, 128 F.3d 810, 817-18 (3d Cir. 1997)).

[48] Doc. No. 1 at 3.

Q: In your complaint you say the Defendant, Barbera, unlawfully searched Plaintiff's room and confiscated a nine-millimeter firearm belonging to [P]laintiff.

You don't know that it was Officer Barbera that actually took the gun out of your room; is that right?

A: That's right. Officer Barbera is the only name I had. So Officer Barbera and company would be a more accurate depiction.

Q: How did you get Officer Barbera's name?

A: I believe he was in the police report as the arresting officer.

Q: And Officer Barbera, are you sure that he is the officer who pushed you to the ground?

A: Yes.

Q: Is it fair to say that you know who Officer Barbera is because you know he pushed you to the ground and you don't know the officer that seized the gun, is it fair to say it wasn't Officer Barbera?

A: That seized the firearm himself?

Q: Yes. Since you're certain that he's the officer that confiscated the gun.

A: I don't know the name of the officer, no.

Q: But if it was Officer Barbera, you would know that.

A: Yes.[49]

After Defendants moved for summary judgment, however, Mr. Houston filed an affidavit attached to his sur-reply brief affirming that "[a]s stated at fact 2 of the original complaint, Affiant witnessed P.O. Barbera confiscate his firearm on September 30, 2011 [*sic*] at 4:30 AM."[50] This affidavit is the only evidence in the record that Officer Barbera seized the gun without a warrant.[51]

It is settled law that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."[52] The purpose of this doctrine is to prevent a party from forestalling summary judgment by contradicting his own testimony.[53] Mr. Houston's belated

---

[49] Depo. Tr. at 32-34.

[50] Doc. No. 48 at 20.

[51] Mr. Houston also cites Officer Barbera's police report, but the report states that the police intended to obtain a search warrant in order to recover the gun. *See* Doc. No. 48 at 7.

[52] *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004).

[53] *Id.* (*citing Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 577-78 (2d Cir. 1969)).

affidavit flatly contradicts his deposition testimony that an unnamed officer – who Mr. Houston was certain was *not* Officer Barbera – seized the gun and Mr. Houston provides no explanation whatsoever for the discrepancy. The affidavit therefore fails to create a genuine dispute of material fact as to whether Officer Barbera seized the gun.

Officer Barbera is the only officer named in the complaint as having seized the gun. The unnamed officer discussed in the deposition testimony is not a party to this case and the complaint makes no allegations regarding the actions of an unnamed officer. According to his deposition testimony, Mr. Houston personally witnessed the unnamed officer seize the gun and Mr. Houston never sought to amend his complaint to add the unnamed officer as a defendant despite having ample time to do so. Mr. Houston has therefore failed to bring any claim arising from the actions of the unnamed officer before this Court and such a claim cannot create a genuine dispute of material fact.

There is also no basis to hold the named defendants liable for the alleged actions of the unnamed officer. There is no vicarious liability for a § 1983 claim; in order to prevail, the plaintiff must establish that each defendant had "personal involvement in the alleged wrongs."[54] When the defendant is a municipality, the plaintiff must demonstrate the existence of a municipal policy or custom of deliberate indifference to the constitutional rights of its citizens.[55] The record contains no evidence that any of the individual named defendants were personally involved in the alleged actions of the unnamed officer or that the City had a policy or custom of deliberate indifference to its citizens' Fourth Amendment rights. For these reasons, Defendants' motion for summary judgment will be granted on this claim.

---

[54] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[55] *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

    iii.      The Search Warrant "Fabricated" by Detective Caldwell

Although unclear, the Court will construe Mr. Houston's allegation that the warrant was "fabricated retroactively by defendant Det. Caldwell" as a claim that Detective Caldwell obtained the warrant under false pretenses.[56] In order to prevail on such a claim, the plaintiff must show, "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."[57] Mr. Houston does not allege what false statement(s) Detective Caldwell may have made in applying for the warrant. Moreover, even if an unnamed officer seized the gun at 4:30 A.M., the deposition testimony does not establish that Detective Caldwell, who did not arrive until 5 A.M., was aware of the seizure when she applied for the search warrant, and Mr. Houston has not produced any other evidence to establish that Detective Caldwell knew or should have known that she was making a false statement in applying for the warrant. Defendants' motion for summary judgment on this claim will therefore be granted.

### B. Fourteenth Amendment Claims

Mr. Houston raises two Fourteenth Amendment claims: 1) that Defendants denied Mr. Houston equal protection of the laws in seizing and retaining his gun, as well as in denying his application for a concealed carry permit; and 2) that Defendants violated Mr. Houston's right to due process of law by failing to return the gun after the charges against Mr. Houston were dismissed. "To bring a viable equal protection claim, a plaintiff must allege that a defendant treated him or her differently than others similarly situated, and that such selective treatment was

---

[56] Doc. No. 1 at 3.

[57] *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

predicated upon membership in a suspect class (e.g. race, gender) or designed to inhibit fundamental rights."[58] The record, however, contains no evidence that Defendants treated Plaintiff differently from anyone else in seizing his gun or denying him a concealed carry permit.[59] Mr. Houston has therefore failed to establish an essential element of his equal protection claim.

In order to bring a claim against a state, its subdivisions or its agents for violation of the due process clause,

> a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. '[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.' … A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'[60]

Pennsylvania Rule of Criminal Procedure 588(a) reads,

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Thus, a Rule 588 motion was a process available to Mr. Houston to obtain the return of his gun. Mr. Houston contends that a Rule 588 motion is too "expensive and burdensome" to constitute an adequate remedy.[61] In his deposition testimony, Mr. Houston stated that an unnamed

---

[58] *Wargo v. Municipality of Monroeville, PA*, 646 F. Supp. 2d 777, 789 (W.D. Pa. 2009) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)).

[59] With regard to the denial of a concealed carry permit, Mr. Houston claims that a notice of a proposed settlement in a class action lawsuit against the City of Philadelphia constitutes evidence that Defendants intended to deprive him of his Second Amendment rights. *See* Doc. No. 48 at 9-15 (the notice). The notice, however, appears to address privacy concerns and does not discuss any Second Amendment claims.

[60] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citations omitted).

[61] Doc. No. 48 at 3.

individual told him that he would have to hire a lawyer in order to obtain the return of his gun,[62] and in his filings he also alleges that a $200 transcript of prior proceedings was required.[63] Neither of these alleged hearsay statements are competent evidence of the requirements for filing a Rule 588 motion and therefore Plaintiff has failed to meet his burden to show that Rule 588 relief was unavailable or patently inadequate.[64]

## C.  Remaining Constitutional Claims

Mr. Houston also contends that Defendants violated his Second, Fifth and Sixth Amendment rights. Mr. Houston contends that Defendants violated his Second Amendment rights by seizing and retaining the gun, and by denying him a concealed carry permit. In a thoughtful opinion, the Eighth Circuit held in *Walters v. Wolf* that the seizure of a particular gun does not constitute a violation of the Second Amendment when the plaintiff is later able to purchase another gun.[65] Mr. Houston was able to purchase an additional gun and also failed to utilize the Rule 588 process in order to obtain the return of this gun. With regard to the denial of a concealed carry permit, in a thorough and well-reasoned opinion, the Tenth Circuit held in *Peterson v. Martinez* that there is no Second Amendment right to carry concealed firearms.[66] Mr. Houston also failed to utilize the process the Commonwealth had made available for challenging the denial of a concealed carry permit: an appeal to the Court of Common Pleas. With the

---

[62] Depo. Tr. at 38.

[63] Doc. No. 48 at 3.

[64] Mr. Houston also contends that he attempted to pursue Rule 588 relief by orally requesting the return of his gun during a hearing in his criminal case. Because Rule 588 is clear that any motion must be *filed*, any oral request that Mr. Houston may have made was not a proper means to make a Rule 588 motion.

[65] *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011).

[66] *Peterson v. Martinez*, 707 F.3d 1197, 1211 (10th Cir. 2013) *cited with approval* in *Drake v. Filko*, 724 F.3d 426, 433-34 (3d Cir. 2013) (holding that New Jersey law requiring showing of justifiable need to obtain a permit to carry a handgun in public does not violate the Second Amendment).

guidance of the decisions of the Eighth and Tenth Circuits, this Court determines that Mr. Houston has not met his burden to establish a violation of his Second Amendment rights.

Mr. Houston's Fifth and Sixth Amendment claims are plainly without merit. The protections of the Fifth Amendment apply only to the federal government and its agents, and none of the Defendants are agents of the federal government.[67] The protections of the Sixth Amendment are limited to the government's conduct during a criminal prosecution, and the criminal charges against Mr. Houston were dismissed.[68]

### D.  State Law Claims

The complaint appears to raise state-law claims for violation of the Pennsylvania constitution, conversion, libel and slander. This Court exercises federal question jurisdiction over this action, and because Defendants' motion for summary judgment will be granted on all federal claims, the Court will consider whether to exercise supplemental jurisdiction over the state-law claims. Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction …" In exercising its discretion to accept or decline supplemental jurisdiction over a claim, a court "should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"[69]

Under the circumstances of this case, the Court determines that these principles are best served by declining to exercise supplemental jurisdiction over the state-law claims. The state-law claims are pleaded in conclusory fashion and have not been developed in any briefing, and

---

[67] *See Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).

[68] *See United States v. Ward*, 448 U.S. 242, 248 (1980).

[69] *Growth Horizons, Inc. v. Del. County*, 983 F.2d 1277, 1284 (3d Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Defendants have not filed a response to the conversion, libel and slander claims. The state-law claims will therefore be dismissed without prejudice to their re-assertion, if appropriate, in state court.

## IV. CONCLUSION

For these reasons, Defendants' motion for summary judgment will be granted on all of Mr. Houston's federal claims and the Court declines to exercise supplemental jurisdiction over Mr. Houston's state-law claims. Mr. Houston also filed a motion to compel long after the time for fact discovery had elapsed, which will be dismissed as untimely.

An appropriate order follows.